Alain BENZAKEN - Arnaud FOURREAU
Maurice-Alexandre SEBBAN
Huissiers de Justice Associés
"Le Liberté", 38 Rue Salvador Allendé
92000 NANTERRE

NO. D070570 C

INVISTA SÀRL,

                    Plaintiff,

vs.

RHODIA S.A.,

                    Defendant.

IN THE DISTRICT COURT OF

ORANGE COUNTY, TEXAS

260th _____ JUDICIAL DISTRICT

**JURY TRIAL DEMANDED**

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

     Plaintiff INVISTA SÀRL brings this action against Defendant Rhodia S.A. for misappropriation of trade secrets, conversion and unfair competition. Plaintiff for its cause of action would show as follows:

### A. NATURE OF THE ACTION

     1.    This case concerns Defendant's unauthorized use and misappropriation of Plaintiff's valuable trade secrets to build a chemical plant in China and to prevent Plaintiff from building its own plant in that market using its own trade secrets.

     2.    Specifically, INVISTA SÀRL brings this action to prevent Rhodia S.A. from misappropriating and making unauthorized use of INVISTA SÀRL's valuable, confidential, proprietary trade secrets, information and other know-how related to the butadiene-based production of adiponitrile ("ADN"), a critical intermediate chemical used in the manufacture of nylon 6,6, using INVISTA SÀRL's "Gen I process" (the "Trade Secrets"). INVISTA SÀRL's proprietary butadiene-based technology is widely recognized as the most cost-effective and

efficient method for manufacturing ADN.

3.   As described in greater detail below, based on public statements by Rhodia S.A., the relevant surrounding circumstances, and on information and belief, Rhodia S.A. has used and/or imminently will use the Trade Secrets in the planning, design, development, construction and operation of an ADN manufacturing facility in the People's Republic of China.

4.   Rhodia S.A.'s affiliates gained access to the Trade Secrets through a joint venture between affiliates of Plaintiff and Defendant. The joint venture is, and has at all relevant times been, operated by employees of various Rhodia entities seconded or loaned to the venture. At least some of the confidential proprietary commercial information comprising the Trade Secrets was provided to Rhodia S.A. and/or its affiliates through documents that were provided in, and during face-to-face meetings that occurred at INVISTA SÀRL's plants, or sites nearby, in the State of Texas, including its plant in Orange, Texas.

5.   As described below, Rhodia S.A. used its control over its affiliates and related entities, including control over the employees and agents of the affiliates and related entities (some of which are known to INVISTA SÀRL and some of which are yet to be unidentified), to misappropriate the Trade Secrets that affiliates and employees of the Rhodia Group (as defined below) received solely for use in connection with the joint venture.

6.   Statements by Defendant Rhodia S.A., and the relevant circumstances, demonstrate that Rhodia S.A. has used, is using and will use (and has caused or will cause its affiliates to use) the Trade Secrets to plan, develop, construct and operate an ADN plant in China. For example, in a March 7, 2007 conference call with investors, Rhodia S.A. announced that it was planning to build an ADN plant in China and characterized ADN as a "proprietary" product. Three weeks later, in a March 26, 2007 article in an industry publication, Rhodia S.A.

indicated that it was making a significant investment to build a plant in China for the manufacture of hexamethylene diamine (or "HMD"), another intermediate required to manufacture nylon 6,6. More recently, a Rhodia S.A. affiliate publicly reiterated the Rhodia Group's intentions to develop an ADN plant in Asia during a July 10, 2007 presentation to investors and industry analysts.

7. On information and belief, Rhodia S.A. already has or imminently will misappropriate and make unauthorized use of, or cause its affiliates and agents to misappropriate and make unauthorized use of, INVISTA SÀRL's Trade Secrets in the planning, design, development, construction and operation of a Rhodia ADN plant in China. This is based, in part, on the following:

(a) Rhodia S.A. and its affiliates have enjoyed access to INVISTA SÀRL's Trade Secrets regarding INVISTA SÀRL's butadiene-based ADN manufacturing technology through the Butachimie joint venture operated by a Rhodia S.A. affiliate and staffed with employees of affiliates and entities of the Rhodia Group;

(b) Rhodia S.A. and its affiliates are intimately familiar with operating a plant designed, operated and based on INVISTA SÀRL's Trade Secrets, and particularly, INVISTA SÀRL's Gen I ADN technology used by the joint venture;

(c) INVISTA SÀRL has the only viable butadiene-based ADN manufacturing technology in the world today. This technology is the most efficient ADN technology presently in use and is vastly more efficient than any other known process;

2e

(d)     On information and belief, Rhodia S.A. and its affiliates are not licensees of any other butadiene-based ADN manufacturing technology;

(e)     The predecessor entity to Rhodia S.A. once operated non-butadiene-based ADN manufacturing facilities. However, after Rhodia S.A.'s predecessor began to rely on output from the joint venture using the butadiene production method based on Plaintiff's Trade Secrets, it shut down its facilities using the outmoded technology; and

(f)     Upon information and belief, Rhodia S.A. and its affiliates have not used their non-butadiene-based technology since closing their non-butadiene-based ADN plants many years ago.

These factors show that Rhodia S.A., especially in light of the long lead times necessary to plan, design, and construct an ADN plant and the timetable it has announced, intends to use and is using or will imminently use the Trade Secrets in order to plan, design, test, construct and operate a new ADN plant in China. In addition, given its exposure to the technology, it is inevitable that Rhodia S.A. will use the Trade Secrets in its China project.

8.     Rhodia S.A.'s plans are also reflected in its recent speech and conduct. In September 2006, INVISTA announced that it had commenced preliminary engineering activities to build a significant ADN manufacturing facility in China. On May 9, 2007, INVISTA formally announced that it was building an ADN plant in China and that it had started taking the required preparatory steps in China toward that end, including the signing of a letter of intent for investment and transfer of land use rights. This plant will entail an investment of hundreds of millions of dollars. As Rhodia S.A. has publicly acknowledged, the projected demand for ADN through the end of the next decade requires, and will be satisfied, by only one efficiently scaled

ADN plant in China.

9.    On September 28, 2007, counsel for INVISTA SÀRL wrote to counsel for Rhodia S.A. to make clear INVISTA SÀRL's position that Rhodia S.A. may not use INVISTA SÀRL's Trade Secrets transferred to the Butachimie joint venture in its consideration, evaluation, design, development, construction or operation of a Rhodia S.A. plant in China, and requested written assurances by October 12, 2007 that Rhodia S.A. would not use the Trade Secrets in connection with an ADN plant in China. The letter also asked Rhodia S.A. to describe the basis for any butadiene-based ADN technology the Rhodia group claims to have the right to use.

10.    Rhodia S.A. never answered this letter. On or about October 5, 2007, however, it appears that two other Rhodia entities (Rhodianyl S.N.C. and Rhodia Opérations S.A.S.) initiated an arbitration under a joint venture agreement (discussed below) against Plaintiff INVISTA SÀRL and two other INVISTA affiliates. This arbitration is governed by French law and the place of the arbitration is Paris. (This putative proceeding is referred to below as the "French arbitration".)

11.    Neither INVISTA SÀRL nor Rhodia S.A. are parties to the joint venture agreement and Defendant Rhodia S.A. is not a party to the French arbitration.

12.    The French arbitration seeks an order that the Rhodia entities may use INVISTA SÀRL's Trade Secrets. As will become clear in the course of the present proceedings, the Rhodia Group is attempting to use its complex structure and arbitration to bind parties who are not parties to the relevant agreements and as part of its scheme to misappropriate INVISTA SÀRL's Trade Secrets and other valuable proprietary information to which it has no legal right.

13.    Rhodia S.A.'s construction of an ADN plant in China using Trade Secrets

2e

misappropriated from INVISTA SÀRL will cause INVISTA SÀRL irreparable injury. Accordingly, INVISTA SÀRL seeks injunctive relief to prevent Rhodia S.A. from misappropriating and making the unauthorized use of the Trade Secrets for the construction of a butadiene-based ADN plant in China, or for any other unauthorized purpose.

## B. CASE DISCOVERY CONTROL PLAN

14.     Pursuant to Rule 190 of the Texas Rules of Civil Procedure, Plaintiff alleges that this case should be conducted under Level 3 of the Discovery Control Plan.

## C. THE PARTIES

### *Plaintiff*

15.     Plaintiff INVISTA SÀRL is a limited liability company organized and existing under the laws of Luxembourg with its Registered Office in Luxembourg. INVISTA SÀRL is one of the largest integrated fibers and polymers businesses in the world. INVISTA SÀRL is a wholly-owned, indirect subsidiary of Koch Industries, Inc. INVISTA SÀRL owns the know-how, including the Trade Secrets, associated with INVISTA's butadiene-based ADN technology. INVISTA SÀRL also owns and operates chemical manufacturing facilities in Orange, Texas and Victoria, Texas and maintains an engineering office in Houston, Texas employing, in total, more than 1,000 people in the State of Texas.

### *Defendant*

16.     Defendant Rhodia S.A. is a corporation organized in accordance with the laws of France, with its corporate headquarters located at 110 Esplanade Charles De Gaulle Immeuble Coeur Defense Tour A 92400 Courbevoie, France. Rhodia S.A. common shares trade on the Paris stock exchange and Rhodia S.A. American Depository Receipts are traded on the over-the-

counter market through OTCQX, a recently launched U.S. stock market for small domestic issues and foreign stocks, under the symbol RHAYY. Rhodia S.A. is the management entity that controls, directly or indirectly, all of the other entities in the Rhodia Group (defined in paragraph 17 below). Defendant Rhodia S.A. may be served with process by a French huissier de justice (bailiff), in compliance with Section 10 (c) of the Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters (as interpreted by France), commonly referred to as the Hague Convention, and in accordance with Section 1 of the Ordinance n°45-2592 dated November 2, 1945 pertaining to the status of huissiers de justice.

### *Other Relevant Entities*

17.     The Rhodia Group refers generally to the various related corporate entities that comprise the structure that is managed, directed and owned (directly or indirectly) by Rhodia S.A. and that operates as, or in the interests of, Rhodia S.A. and/or other corporate entities in the group.   Employees and agents of various entities within the Rhodia Group who were seconded or loaned as employees for Butachimie had access to the trade secrets in connection with the work of the joint venture.  These entities included: Rhodia CPE, Rhodia Alsachimie, Rhodia PI, and Rhoditech.

18.     Butachimie SNC ("Butachimie") is the joint venture owned by affiliates of Plaintiff and Defendant through which Rhodia S.A. and/or Rhodia Group affiliates or related entities obtained access to the Trade Secrets.  Butachimie owns an ADN manufacturing plant in France using INVISTA SÀRL's butadiene-based technology and the Trade Secrets.  Rhodia Group employees seconded to the joint venture operate the Butachimie ADN manufacturing plant.  Butachimie is a company (a *société en nom collectif*) organized under the laws of France with offices at 24-26 quai Alphonse le Gallo, 92512 Boulogne Billancourt, France.

19.     Rhodia Polyamide Co. Ltd., is, on information and belief, an entity incorporated in the Republic of South Korea and whose executives have made public statements concerning the Rhodia Group's plans for an ADN plant in China.   On information and belief, Rhodia Polyamide Co. Ltd. is one of the Rhodia Group entities through which Rhodia S.A. will plan, develop, design, direct, and/or effect the construction of and operation of an ADN plant in China using the Trade Secrets.

## D.   JURISDICTION AND VENUE

20.     This is an action for injunctive relief and/or damages arising out of the Rhodia S.A.'s misappropriation of trade secrets, unfair competition, and conversion.

21.     This Court has subject matter jurisdiction over the subject matter of this case pursuant to Article 5, Section 8 of the Texas Constitution, Section 24.008 of the Texas Government Code, Texas Civil Practice and Remedies Code §§ 65.011(3) and 64.021(a), and Texas common law, because INVISTA SÀRL seeks injunctive relief.

22.     The Court has personal jurisdiction over Rhodia S.A. pursuant to Texas Civil Practice and Remedies Code § 17.042 because, as described in greater detail below, Rhodia S.A.'s tortious actions giving rise to the causes of action occurred, at least in substantial part, in the State of Texas.  This Court has jurisdiction over this action because the damages sought by INVISTA SÀRL exceed the minimum jurisdictional limits of this Court.

23.     In addition, Rhodia S.A. maintains substantial ongoing minimum contacts with the State of Texas through conducting business in the State of Texas.  The assertion of personal jurisdiction over Rhodia S.A. by a Texas court would in no way offend traditional notions of fair play and substantial justice.

2e

24.     Venue is proper pursuant to Texas Civil Practice and Remedies Code § 15.002(a)(1), because a substantial part of the events giving rise to the claims occurred in Orange County.

**E. FACTS**

Alain BENZAKEN - Arnaud FOURREAU
Maurice-Alexandre SEBBAN
Huissiers de Justice Associés
"Le Liberté", 38 Rue Salvador Allendé
92000 NANTERRE

Background

25.     On April 23, 1974, DuPont de Nemours France S.A.S. ("DuPont France") and Rhodia S.A.'s predecessor, Société des Usines Chimique Rhône-Poulenc ("SUCRP") entered into a joint venture agreement (the "JVA").  DuPont France was a subsidiary of E.I du Pont de Nemours and Company ("DuPont"), one of the largest chemical companies in the world and a leading innovator in the development of polymers, including methods and processes used to manufacture ADN.  SUCRP was a subsidiary of the Rhone Poulenc Group, one of the largest French chemical groups at the time.

26.     The purpose of the joint venture was to create a company, later called Butachimie SNC, for the purpose of constructing and operating a plant in France to manufacture ADN for use in Europe.  The aim of the JVA was to provide expanded European ADN capacity for both joint venture parties and allow them to achieve economies of scale that they would otherwise be unable to achieve on their own.

27.     ADN is an intermediate used in the manufacture of nylon 6,6 (polyhexamethyleneadipamide), a polyamide first invented and commercialized by DuPont.  Nylon 6,6 is used in high-performance engineering thermoplastics that are desirable because of their high tensile strength, excellent abrasion, chemical and heat resistance, and low coefficients of friction.  Among the wide range of applications in which nylon 6,6 is used are textile and

industrial fibers and automotive parts, electrical parts, and consumer articles.

28.    The Butachimie joint venture constructed an ADN manufacturing plant located in Chalampé, France. SUCRP had no butadiene-based ADN technology or know-how. All of the technology used to design and build the Butachimie ADN plant came from DuPont and was provided by DuPont solely for the benefit of the joint venture. Prior to the construction of the Butachimie joint venture ADN plant, DuPont operated other ADN plants in the U.S., including large plants in Orange, Texas and Victoria, Texas, which INVISTA SÀRL owns and operates today.

29.    DuPont's interest in Butachimie was held by DuPont France and DuPont licensed the know-how to build and operate the Butachimie plant, including the Trade Secrets, to DuPont France. DuPont France, in turn, provided this know-how to Butachimie solely for the benefit of the joint venture under the auspices of the JVA, the license agreement and pursuant to confidentiality obligations. Because SUCRP had no advanced ADN technology, and no butadiene-based ADN technology, its contribution to the joint venture consisted of constructing the Butachimie plant, which was built as an interconnected element of a complex of existing SUCRP facilities, in the midst of which the Butachimie plant was sited. In addition, SUCRP operated the Butachimie plant with employees from entities in the Rhône Poulenc Group (and, later, the Rhodia Group) seconded or loaned to the joint venture, a practice that continues today. The Butachimie plant began operations in 1978, using DuPont's process for the production of ADN known as the Gen 1 Process.

30.    In 1992, the Butachimie joint venture purchased SUCRP's HMD manufacturing plant located at the Chalampé, France site where Butachimie's ADN manufacturing plant was also located. The HMD plant acquired by Butachimie used HMD technology developed by

2e

SUCRP and continued after the purchase to use SUCRP HMD technology pursuant to a license from SUCRP.

31.     DuPont/INVISTA SÀRL is recognized as the technology supplier for the ADN technology for the joint venture.  The Rhodia Group similarly is recognized as the technology supplier for the HMD technology operated by the joint venture.

32.     In 1997, SUCRP transferred its chemicals and specialties business, including its ADN and HMD production capacities at Butachimie, to the Rhodia Group, which is directed and managed by Rhodia S.A.  SUCRP's interest in Butachimie was transferred to a Rhodia S.A. subsidiary, Rhodianyl S.N.C.

33.     In 2004, affiliates of the company now known as INVISTA purchased the DuPont nylon and intermediates business, including DuPont's ADN research and manufacturing facilities at Orange and Victoria, Texas and abroad and the know-how and other trade secrets used in the production of ADN, including the Trade Secrets at issue here.  KoSa France Holding SÀRL, an affiliate of INVISTA SÀRL, is the successor to DuPont France and is the owner of INVISTA's interest in Butachimie.

34.     The Butachimie facility is currently the largest ADN-producing plant in the world.

Protection of Confidential Technical Information

35.     DuPont provided significant, valuable confidential technical information regarding the manufacture of ADN to Butachimie.  Because Rhodia S.A. was one of DuPont's chief competitors (as it is with respect to INVISTA SÀRL today), DuPont required that any transfers of information to Rhodia entities and employees were on the condition that the Trade

Secrets were to be used solely for the benefit of the joint venture and not for the benefit of the Rhodia Group and subject to confidentiality restrictions.

36.     Throughout the course of the joint venture, DuPont, and later INVISTA SÀRL and/or its affiliates routinely and on an ongoing basis provided Butachimie, subject to confidentiality restrictions, with additional confidential and proprietary know-how and process improvements, including the Trade Secrets, developed through their ongoing research and development, and through their experience in operating their other ADN plants in Orange, Texas and Victoria, Texas. This confidential information improved the efficiency and safety of the Gen 1 Process and allowed for significant expansions in Butachimie's ADN manufacturing capacity.

Critical Gen 1 Trade Secrets Provided to Butachimie by DuPont

37.     During the course of the Butachimie joint venture, DuPont (and later INVISTA SÀRL) provided extensive confidential trade secret information to Butachimie. This trade secret information included the information necessary to design, develop, construct and operate such a plant, as well as information that enabled the Butachimie plant to significantly increase ADN manufacturing efficiency and capacity over time. It did this through extensive transfers to Butachimie of confidential trade secret technical information, as INVISTA SÀRL will demonstrate in these proceedings.

38.     In addition to the confidential technical transfers DuPont provided to Butachimie, employees from DuPont and subsequently INVISTA SÀRL frequently met with and continue to meet with Butachimie employees (i.e., Rhodia Group employees seconded to Butachimie) in technical transfer meetings concerning ADN production. Butachimie has no employees of its own. Its entire workforce consists of personnel seconded from the Rhodia Group (or its predecessor SUCRP), who are under the control of the Rhodia Group and who interact with

2e

employees and supervisors from other Rhodia Group entities.

39. A number of these technical transfer meetings occurred in Texas at or near DuPont's, now INVISTA SÀRL's, plants located in Orange and/or Victoria. During the course of these meetings, DuPont (and later INVISTA SÀRL) supplied extensive confidential technical information concerning the ADN manufacturing process for purposes of Butachimie, including the Trade Secrets, to Rhodia Group employees seconded to or working as agents for Butachimie.

40. As a result of DuPont's provision of confidential technical information, Butachimie's ADN production has increased dramatically over the years since the plant first became operational.

41. Defendant Rhodia S.A. has had access to the Trade Secrets through its control over the Rhodia Group entity that operated the Butachimie plant and through its indirect control over both the Rhodia Group employees that worked at the plant and the Rhodia Group employees who provided services and support to Butachimie.

42. Because, on information and belief, the Rhodia Group does not own or have any rights to any butadiene-based ADN manufacturing process, and because it would not be commercially reasonable to build a new ADN plant without this technology, Rhodia S.A. will misappropriate, convert, and make unauthorized use, and/or cause one or more Rhodia Group entities to misappropriate, convert, and make unauthorized use, of the Trade Secrets in order to plan, and ultimately construct and operate, an ADN plant in China. Indeed, there is a very high likelihood that Rhodia S.A. and the Rhodia Group entities with which it is acting in concert already have misappropriated, converted, and unlawfully used the Trade Secrets in connection with their consideration of whether, when and how to develop, plan, construct and operate a new ADN manufacturing plant in China and in connection with their discussions with potential

2e

customers, Chinese authorities and others with respect to their plans for an ADN plant in China.

<u>Rhodia S.A.'s Plan to Use the Trade Secrets in the Planning, Development, Construction and
Operation of an ADN Plant in China Will Cause INVISTA SÀRL Irreparable Harm</u>

43.   With the expiration of the WTO's Interim Agreement on Textiles and Clothing,
and the attraction of lower costs of production, much of the demand for ADN in the future will
come from Asia and, especially, China.   China is therefore a critical market for INVISTA SÀRL
INVISTA SÀRL currently ships ADN from its manufacturing plants in Texas and abroad to
customers in China.

44.   On September 19, 2006, INVISTA SÀRL announced that "INVISTA has begun
engineering activities to construct a world-scale nylon 6,6 facility in Asia to support the region's
growing demand for adiponitrile (ADN), hexamethylene diamine (HMD), and nylon 6,6
polymer. The new facility would deploy INVISTA's proprietary, next generation of butadiene-
based ADN technology to expand its low-cost, competitively advantaged position into Asia."

45.   INVISTA SÀRL is also currently expanding its capacity to produce ADN at its
Orange and Victoria, Texas plants and expects to complete those expansions by 2008.

46.   On September 25, 2006, less than one week after INVISTA SÀRL's
announcement, Rhodia S.A. announced that it, too, was "studying the feasibility of building an
adiponitrile (ADN) plant in Asia."

47.   More recently, Defendant Rhodia S.A. has made a series of statements that
corroborate its plans to build an ADN plant in China.  In a March 7, 2007 conference call with
investors regarding Respondents' financial performance and future business plans that included
Rhodia S.A.'s Chief Executive Officer, Jean-Pierre Clamadieu, Rhodia S.A. publicly stated that

it intends to develop and build a new ADN plant in China.

48.  During the March 7, 2007 conference call, Rhodia S.A. offered its assessment of the market for ADN, acknowledging that ADN is a "proprietary product" which "very few players worldwide can produce" and stated that "[t]here will be a tight supply/demand situation, and we expect the situation to last at least until 2011."

49.  Rhodia S.A. advised the market that "we are obviously looking at opportunities to develop a project for ADN a little bit later in the future."

50.  During the conference, Rhodia S.A. was directly asked about its timing for building an ADN plant in China.  Rhodia S.A. stated that "[o]ur competitors at INVISTA have signaled that they are looking at a project which could start in 2011 in Asia" and that the 2011 timeframe signaled by INVISTA "is probably a good target."  Rhodia S.A. further stated that "a new unit is probably necessary on the market in 2011 or 2012" and that because of the "three years' lead time between the decision and the time where such a venture is operational, it means that probably next year we need to have made a decision."

51.  An article in an industry publication, Plastics News, made Rhodia S.A.'s plans to build an ADN plant in China even more apparent.  In that article, dated March 26, 2007 and entitled "Rhodia focused on Asia," Laurent Schmitt, the president of Rhodia Polyamide Co. Ltd., stated that "[t]he Asian market is really for us a business focus" and that "[i]t's our first priority for growth."

52.  The Plastics News article further stated that "Rhodia Polyamide Co. Ltd. is looking at building an ADN plant in Asia to strengthen its raw materials capacity for nylon resins, part of what the company said is a focus on investments in engineering plastics and Asia."

2e

The article explained that the Rhodia group "[expects] the polyamide market to grow 12 percent a year in Asia, about five times worldwide growth" and that the group anticipates its "own growth in polyamides in Asia to exceed the market's growth."

53.   The Rhodia Group's preparatory actions for an ADN plant in China are telling. The Plastics News article explained that "Schmitt declined to disclose details of the review of whether to build an ADN plant, but Rhodia announced in September that it was making a related investment for a 132 million pound-per-year plant to make hexamethylene diamine in China, another raw material used in making polyamide." To make polyamide, the Rhodia Group will need both HMD and ADN. Given the Rhodia Group's substantial investment in an HMD plant, an investment to obtain a supply of ADN in Asia is the next logical step. Then, the Rhodia Group could use the HMD and ADN to produce nylon 6,6.

54.   Rhodia S.A.'s plans to build an ADN plant in China were re-confirmed in a July 10, 2007 "Analyst & Investor Day" presentation. In that presentation, a Rhodia S.A. subsidiary confirmed that, in furtherance of the Rhodia Groups' strategy for "strengthening [its] position in Asia," the previously announced "feasibility study of new ADN capacity" was already underway. As reported by Citigroup, during that presentation, Rhodia S.A.'s CEO, Jean Pierre Clamadieu "stressed [his] belief that only one plant will ultimately be constructed." Similarly, Deutsche Bank observed, following the presentation, "[w]hile both Rhodia and Invista (Global #1 ADN player) are studying the feasibility of building new AND capacity in China . . . with a view of starting operations in 2011/12, we believe there is room for only one new large facility in Asia."

55.   On information and belief, in furtherance of its plan to develop, build and operate an ADN plant in China, Rhodia S.A. and its affiliates have been exploring possible sites for a

new ADN plant and negotiating with potential customers and other parties in China regarding a new ADN plant in China. In order for Rhodia S.A. to meet its self-proclaimed expected completion date of 2011, it must have already started contacting potential customers in China, planning and designing the new ADN plant, identifying and scoping potential plant sites, preparing to obtain government permits and business licenses, obtaining or requesting funding, and preparing feasibility studies.

56.     On information and belief, Rhodia S.A. and its affiliates have not licensed ADN technology from any other entity and do not have access to any ADN technology other than the proprietary technology, including the Trade Secrets, disclosed by DuPont and INVISTA SÀRL to the Butachimie joint venture for the sole benefit of the Butachimie joint venture.

57.     On information and belief, the Rhodia Group's predecessors stopped using non-butadiene-based ADN manufacturing technology decades ago in favor of INVISTA SÀRL's butadiene-based ADN technology. There was good reason for this, as the benefits to the Rhodia Group of using INVISTA SÀRL's butadiene-based ADN technology are clear. INVISTA SÀRL's butadiene-based ADN technology is far more efficient than any other ADN technology available to the Rhodia Group. Even if the Rhodia Group has access to a non-butadiene based production method, the relative inefficiencies and costs involved in using this technology would make its use commercially unreasonable. Further, Rhodia Group employees are particularly familiar with INVISTA SÀRL's butadiene-based ADN technology, having worked with this technology for many years at the Butachimie joint venture.

58.     INVISTA SÀRL's butadiene-based ADN technology is the best tried-and-tested ADN manufacturing technology in the world. Rhodia S.A. and its affiliates have had access to that technology, know how to use it, and do not have access to any other butadiene-based ADN

2e

technology to use in a new ADN plant in China.  Thus, in order for Rhodia S.A. and its affiliates to follow through with their announced intentions to develop a new ADN plant in China, they must use and exploit the Trade Secrets.  Their exposure to the Trade Secrets also means that they will inevitably use the Trade Secrets in any construction of an ADN plant.

59.     Furthermore, consistent with its September 19, 2006 announcement, on May 9, 2007, INVISTA announced that it will build a plant to manufacture ADN, HMD and nylon 6,6 in China in order to serve the region's demand for nylon 6,6 intermediates and polymers. INVISTA announced that engineering and design work for the new complex had already begun and that it has signed a letter of intent for investment and transfer of land use rights to build the complex at Shanghai Chemical Industrial Park.

60.     Consequently, Rhodia S.A.'s imminent unlawful use and exploitation of INVISTA SÀRL trade secrets concerning Gen 1 ADN technology will cause INVISTA SÀRL severe and irreparable harm, including, but not limited to, lost profits and the loss of the economic value of the Trade Secrets.

61.     In view of INVISTA SÀRL's own, publicly-announced plans to develop an ADN plant in China, which would necessarily be harmed by Rhodia S.A.'s construction of a competitor ADN plant, the imposition of damages and preliminary and permanent injunctive relief is fully appropriate.

## F.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (MISAPPROPRIATION OF TRADE SECRETS)

62.    All of the allegations set forth in the previous paragraphs above are realleged and incorporated as if fully stated herein.

63.    In the course of the development, construction and operation of the Butachimie joint venture, Rhodia S.A. and its affiliates obtained confidential technical information relating to the manufacture of ADN from DuPont, and later, INVISTA SÀRL, *i.e.*, the Trade Secrets. The Trade Secrets constitute trade secrets of substantial economic value.  The Trade Secrets were not known to the public or to other persons who can obtain economic value from their disclosure or use.

64.    Rhodia S.A. has acquired INVISTA SÀRL's Trade Secrets by improper means. Rhodia S.A. only obtained the Trade Secrets from its employees or those of its affiliates and their predecessors-in-interest, who worked at or on behalf of Butachimie.  These employees were precluded from sharing the Trade Secrets they learned while at Butachimie with Rhodia S.A. for any purpose other than for the sole use and benefit of the Butachimie joint venture.

65.    Rhodia S.A. knew the Trade Secrets were confidential.  The JVA and other confidentiality agreements contain express restrictions regarding the use and transfer of confidential technical information such as the Trade Secrets.

66.    Rhodia S.A.'s imminent intended use of INVISTA SÀRL's Trade Secrets in the planning, development, construction and operation of an ADN plant in China is unauthorized. Butachimie employees have disclosed, and/or have been forced or required to disclose, the Trade

2e

Secrets without the express or implied consent of INVISTA SÀRL or its predecessors-in-interest.

67.    As a result of the misappropriation of INVISTA SÀRL's Trade Secrets and intended immediate use by Rhodia S.A. and its affiliates, INVISTA SÀRL will suffer imminent and irreparable damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (UNFAIR COMPETITION)

68.    All of the allegations set forth in the previous paragraphs above are realleged and incorporated as if fully stated herein.

69.    INVISTA SÀRL, or its predecessors-in-interest, created the Trade Secrets through intensive time, labor, skill and money.  Using the confidential technical information of INVISTA SÀRL and the manpower of the Rhodia Group, the Butachimie joint venture has become the leading producer of ADN in the world.

70.    Rhodia S.A.'s imminent unauthorized use of INVISTA SÀRL's Trade Secrets in the planning, development and construction of an ADN plant in China, in competition with INVISTA SÀRL, would allow Rhodia S.A. to obtain a unique and unfair advantage in that competition.  Rhodia S.A.'s knowledge regarding ADN manufacturing technology stems from the Trade Secrets provided to Butachimie by INVISTA SÀRL and their predecessors-in-interest.  If Rhodia S.A. is permitted to proceed with its plans to develop and construct an ADN plant in China, Rhodia S.A. will have, through its unfair conduct, avoided significant expenses incurred by INVISTA SÀRL in developing ADN technology.

71.    As a result of Rhodia S.A.'s imminent use of INVISTA SÀRL's Trade Secrets,

INVISTA SÀRL will suffer imminent and irreparable commercial damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### (CONVERSION)

72.    All of the allegations set forth in the previous paragraphs above are realleged and incorporated as if fully stated herein. INVISTA SÀRL's predecessors-in-interest invented and owned the Trade Secrets relating to the ADN manufacturing process. The Trade Secrets were provided to the Butachimie joint venture solely for the benefit and use of the Butachimie joint venture.

73.    Through the 2004 acquisition of E.I. DuPont's nylon and intermediates business, INVISTA SÀRL became the rightful owner of the Trade Secrets.

74.    Rhodia S.A.'s assumption of dominion and control, or its imminent plans to assume dominion and control, over the Trade Secrets for use in the planning, development, construction and operation of an ADN plant in China is unauthorized and unlawful.

75.    The fair market value of the property that Rhodia S.A. now seeks to use is significant and will be determined at trial.

76.    As a result of Rhodia S.A.'s wrongful actions, INVISTA SÀRL will suffer imminent and irreparable damages in an amount to be proven at trial.

### G. REQUEST FOR INJUNCTIVE RELIEF

77.    Rhodia S.A. has wrongfully acquired INVISTA SÀRL's Trade Secrets from Rhodia S.A.'s employees seconded at Butachimie and/or Rhodia S.A.'s employees who provide

2e

services to Butachimie and/or the employees of other entities in the Rhodia Group and under Rhodia S.A.'s control yet to be determined.

78.     Upon information and belief, Rhodia S.A. already has and/or is prepared to and plans to wrongfully use and convert INVISTA SÀRL's Trade Secrets, and there is a real and immediate threat that Rhodia S.A. will use, if it has not already used, these Trade Secrets in the planning, development, construction and operation of an ADN plant in China.

79.     Unless this Court enjoins Rhodia S.A. from using and converting INVISTA SÀRL's Trade Secrets in the wrongful manner described herein, INVISTA SÀRL will suffer irreparable injury and harm for which it lacks an adequate remedy at law.

80.     INVISTA SÀRL has been and is likely to continue to be substantially and irreparably injured in its business, and the threat of continued injury to its business and the attendant goodwill outweighs any harm the issuance of an injunction may inflict upon Rhodia S.A. and their agents.

81.     INVISTA SÀRL has a substantial likelihood of success on the merits of one or all of its claims against Rhodia S.A.

82.     The issuance of an injunction as requested herein will in all respects serve the public good, as companies that are risk-takers in the commercial world, having accumulated trade secrets and confidential and proprietary information, should be protected.

83.     Consequently, INVISTA SÀRL is entitled to a temporary and permanent injunction enjoining Rhodia S.A. and its agents from making any use or disclosure of, or causing anyone to make any use or disclosure of, the Trade Secrets in connection with their participation, directly or indirectly, individually or as an employee, partner, or officer of any person, firm or

2e

Respectfully submitted,

**GERMER GERTZ, L.L.P.**
P.O. Box 4915
Beaumont, Texas 77704
(409) 654-6700 – Telephone
(409) 835-2115 – Telecopier

_(signature)_

**Lawrence L. Germer**
State Bar No. 07824000
**Larry J. Simmons**
State Bar No. 00789628

OF COUNSEL:

Mark D. Beckett
Kurt M. Rogers
LATHAM & WATKINS LLP
885 Third Avenue
New York, N.Y. 10022
(212) 906-1200 – Telephone
(212) 751-4864 – Telecopier

Robert J. Gunther, Jr.
James P. Barabas
WILMER CUTLER PICKERING
  HALE & DORR LLP
399 Park Avenue
New York, N.Y. 10022
(212) 230-8800 – Telephone
(212) 230-8888 – Telecopier

corporation, in any activity involving the planning, design, specification, construction, operation, maintenance, improvement, modification, repair, or vendor identification or selection with respect to any current or planned plant, unit, or facility relating to the manufacture of ADN in China or elsewhere other than in connection with the Butachimie joint venture.

## H.  JURY DEMAND

84.     INVISTA SÀRL demands a trial by jury.

## I.  PRAYER FOR RELIEF

WHEREFORE, INVISTA SÀRL prays for judgment against Rhodia S.A. as follows:

1.     For temporary injunctive relief;
2.     For permanent injunctive relief;
3.     For a declaratory judgment that Defendant has no right to use the Trade Secrets for its own use or benefit, and, specifically, that Defendant may not use Plaintiff's Trade Secrets;
4.     For general, special and compensatory damages in an amount to be proven at trial;
5.     For prejudgment interest at the legal rate;
6.     For punitive damages;
7.     For attorneys' fees;
8.     For costs of the suit; and
9.     For such additional relief as the Court deems proper.

2e